# CIRCUIT COURT OF BALTIMORE CITY.

Filed March 3, 1914.

BERNARD W. WHITE, ET AL.,
vs.
CATHERINE E. WINCHESTER,
ET AL.

*Semmes, Bowen & Semmes* and *Edwin H. Brown, Jr.*, for plaintiffs.

*Washington Bowie, Jr.*, for defendants.

DAWKINS, J.—

The question here presented is a very novel one. It is compel the performance of a contract to have a will remain as it was at the time it was made. The words which are in fact made the basis of the alleged contract, the performance of which is sought to be had, are as follows:

"The said Mary E. White agrees and obligates herself that her will as now made and in the possession of John B. Brown shall be and remain as the consideration for the following undertaking and agreement on the part of her children hereinafter named."

The agreement is dated February 28, 1883. No date is given to the will referred to therein, though the agreement seems to have been recorded on August 28, 1883.

Mary E. White made a will on the 14th day of June, 1883, which I take it is the will referred to in the agreement. Among other things the will provides for the payment of debts, the gift of a number of articles of personal property and finally in the seventh paragraph is provides that all the rest and residue of the estate, real, personal and mixed, of the said Mary E. White shall be divided into four equal parts among her four children, Thomas W. K. White, Edmund C. White, Annie Amelia White and James C. White. These parties being apparently all the children other than Mrs. Winchester. The further provision appears in Item 9 of the will, making certain disposition of the property in the event of the death of any of the above children during the lifetime of the testatrix. There subsequently was a codicil reciting the death of Edmund C. White and substituting Thomas W. K. White in his place to take the legacy left to Edmund C. and substituting James C. to take the legacy given to Annie Amelia, Annie Amelia and Edmund C. having died. This is dated March, 1886. There is a subsequent codicil charging the real estate with a legacy of $800 to Edward W. White. This codicil does not seem to be dated, but I presume it was subsequent to the other codicil above mentioned, both of which codicils are after the date of the will. Subsequently the said Mary E. White made a will dated the 12th of October, 1912, whereby she devised all of her estate to Catherine Elizabeth Winchester during her lifetime and after her death unto her children, their heirs and assigns forever. This last-named will was duly admitted to probate in the Orphans' Court of Baltimore City. The former will so far as the records disclose never having been offered for probate. The relief is asked in this case because Catherine E. Winchester received her share of the estate of Marmaduke G. White at the time this agreement was entered into and that Mrs. Mary E. White promised to protect the other children for their generosity in helping to pay off Mrs. Winchester. Mrs. White is alleged to have died in Baltimore in 1913. She was

318

then making her home with Mrs. Winchester. There does not seem to be any doubt that a bill for specific performance would lie to enforce a contract for a specific devise or to enforce an agreement to give a certain sum of money, but this is not a contract to devise, but that a will shall remain as it was written. To grant the relief here sought would be in effect to take away the testamentary rights of the testatrix and to set aside a solemn last will and testament.

As has already been stated, the prior will is general in its character, leaving the property of different kinds. There is no actual mention of the farm which it is here sought by specific performance to have conveyed to the plaintiffs, though I apprehend that this farm is supposed to be comprehended in the residuary clause of the will. The question might be asked, What is to become of the codicils that were executed after the agreement was made? Where did the right to change stop? What happened between 1883 and 1886? Is the will of 1882 subject to confirmation or revision by the court? How far, if the plaintiffs' theory be sound, can a contract to let a will remain untouched be enforced when by the very terms of the codicils it has been changed and modified? It would seem that the court is asked to do the impossible. In the outset it would seem to me that there is no sufficient, definite agreement, however meritorious the contention of the plaintiff may be, that Mrs. Winchester got from the other heirs and her mother a portion of the father's estate to which she was entitled and however true it may be that the other heirs have been deprived by their mother's last will and testament from what they would have been entitled, it does not seem possible that a court of equity could set aside the will of 1912. The agreement does not say one word about home farm. It does speak of two farms, but can the court go into papers of this kind, and especially a will, and attempt to say that there is a contract which is capable of enforcement. Where there is an application for specific performance proof of the intention of the contracting parties must be clear and the contract must be certain in its terms and must be free from all shade or color of ambiguity. Whilst there can be no doubt of the legal right of one having exclusive ownership of property to enter into an agreement to execute a will in favor of the other contracting party, the donee of a power can not enlarge or amplify its scope, and this is the reasoning in the Wilks case, in 60 Maryland. In the case before us, however, there is no such certainty of the intention of the parties to do a definite certain thing as is contemplated in the case mentioned. I can not subscribe to the idea that it can be possible that a will should be disturbed or attempted to be disturbed that is so general in its terms and makes disposition of so many different things, that has been modified by codicil and wherein there is no suggestion that it was made in connection with an agreement or that the particular property here sought to be obtained is mentioned by that description. If a will can be set aside in any such proceeding, it would seem to me that the proof should be clear and explicit that the utmost certainty should prevail before the court should undertake to set aside a solemn testamentary act of the deceased party in the absence of some possible explanation of the testatrix's conduct when she is no longer present to vindicate herself against the imputation of bad faith. It might be possible, therefore, that there would be a remedy at law for the breach of the contract. If there be, that is the only remedy that would seem to be open. I can not think that there is any power existing in this court to do something that would be a most dangerous thing and upon which the court can not look with favor, however much any unfair act may have been done.

The demurrer, therefore, will be sustained.